# EXHIBIT A

2012-1507

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APPLE INC.,

Plaintiff - Appellee

v.

SAMSUNG ELECTRONICS CO., LTD., SAMSUNG
ELECTRONICS AMERICA, INC., AND SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC,

Defendants - Appellants

Appeal from the United States District Court for the Northern District of California
in Case No. 12-CV-00630-LHK, Judge Lucy H. Koh

SPRINT SPECTRUM, L.P.'S AMICUS CURIAE BRIEF IN SUPPORT OF
REVERSAL OF PRELIMINARY INJUNCTION

Jonathan N. Zerger
Angel D. Mitchell
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Counsel for Amicus Curiae
Sprint Spectrum, L.P.

# CERTIFICATE OF INTEREST

Counsel for amicus curiae Sprint Spectrum, L.P. certifies the following:

1.     The full name(s) of every party represented by me are:

SPRINT SPECTRUM, L.P.

2.     The name(s) of the real parties in interest represented by me are:

SPRINT SPECTRUM, L.P.

3.     All parent corporations and any publicly held companies that own 10

percent or more stock of the parties represented by me are: SPRINT

NEXTEL CORPORATION.

4.     The names of all law firms and the partners or associates that

appeared for SPRINT SPECTRUM, L.P. in the trial court or are

expected to appear in this court are:

Jonathan N. Zerger
Angel D. Mitchell
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Dated:  July 23, 2012          Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:  /s/ Jonathan N. Zerger_____
Jonathan N. Zerger
Counsel for Amicus Curiae
Sprint Spectrum, L.P.

i

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF CONTENTS........................................................... ii

TABLE OF AUTHORITIES ....................................................iv

STATEMENT OF INTEREST ..................................................1

ARGUMENT .........................................................................3

I.    A Preliminary Injunction is an Extraordinary Remedy in Which the Court Must Take Into Account the Possibility of Harm to Other Interested Persons. ....................................3

II.    A Preliminary Injunction Substantially and Irreparably Harms Sprint, Permeates an Entire Industry and Its Consumers, and is Unnecessary to Resolve the Dispute Between Apple and Samsung..............................................4

    A.    An Immediate Preliminary Injunction Harms Sprint's Substantial Investment in its Device Portfolio and Causes Irreparable Harm to Sprint's Market Share. ...........................................................5

    B.    An Immediate Preliminary Injunction Leaves a Void in Sprint's Device Portfolio that Places Sprint at Risk of Losing Market Share, Impacts Thousands of Distribution Points, and Tarnishes Sprint's Reputation. ................................................8

    C.    Preliminary Injunctive Relief Should Not Become a Staple of the "Smartphone Wars" Because it Places Sprint in the Cross-hairs of the Parties' Dispute as an Unwitting Victim, and is Unnecessary to Resolve the Parties' Dispute Via Relief on the Merits. ................................................10

CONCLUSION .....................................................................13

PROOF OF SERVICE ............................................................................... 15

CERTIFICATE OF COMPLIANCE ........................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Diginet, Inc. v. Western Union ATS, Inc.*,
  958 F.2d 1388 (7th Cir. 1992) ..............................................................4

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
  995 F.2d 1566 (Fed. Cir. 1993) ........................................................12

*Iowa Right to Life Comm., Inc. v. Williams*,
  187 F.3d 963 (8th Cir. 1999) ................................................................3

*McGlone v. Bell*,
  681 F.3d 718 (6th Cir. 2012) ................................................................3

*Punnett v. Carter*,
  621 F.2d 578 (3d Cir. 1980) ................................................................4

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011) ............................................................3

*Smith Int'l, Inc. v. Hughes Tool Co.*,
  718 F.2d 1573 (Fed. Cir. 1983) ..........................................................3

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)..................................................................................3

## STATUTES & RULES

FED. R. APP. P. 29......................................................................................1

## OTHER AUTHORITY

Steve Lohr, *A Bull Market in Tech Patents*, N.Y. TIMES (Aug. 16, 2011),
  *available at* http://www.nytimes.com/2011/08/17/technology/a-bull-
  market-in-tech-patents.html?pagewanted=all (last visited July 7, 2012)...........10

## <u>STATEMENT OF INTEREST</u>[1]

The district court granted Plaintiff-Appellee Apple Inc.'s ("Apple") motion for a preliminary injunction, enjoining Defendants-Appellants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC ("Samsung") from selling Galaxy Nexus smartphones in the United States as of July 3, 2012. On July 6, this Court entered an order temporarily staying the preliminary injunction, pending the Court's consideration of the motion to stay pending appeal. *See* 12-1507 Dkt. 15 at 2. Amicus curiae and non-party Sprint Spectrum, L.P.[2] ("Sprint") respectfully submits this brief in support of a reversal and denial of that preliminary injunction. Sprint respects intellectual property rights and takes no position on the merits of the dispute between Apple and Samsung. Indeed, Sprint would take the same position if the litigants were reversed or replaced by other handset manufacturers.

Sprint is a communications company that, among other things, offers for sale wireless services using a variety of multi-functional devices such as handsets for use with Sprint's voice and data services. These devices are manufactured by both

---

[1] Pursuant to FED. R. APP. P. 29(c)(5), Sprint states that no counsel for a party authored this brief in whole or in part. Furthermore, no person or entity, other than Sprint or its counsel, contributed money that was intended to fund preparing or submitting the brief.

[2] Sprint Spectrum L.P. is owned by Sprint Nextel Corporation. Sprint Spectrum, L.P. is the primary Sprint-related entity that sells various smartphone devices and corresponding services to end users in the United States.

1

Apple and Samsung, as well as by others. One of the devices in Sprint's current handset device portfolio is the Galaxy Nexus subject of the preliminary injunction.

The ripple effects from the preliminary injunction issued against this device extend beyond the parties, permeating an entire industry and its consumers. It harms Sprint's substantial investment in its device portfolio. It leaves a void in that portfolio that likely cannot be filled for 9-12 months, thereby threatening irreparable harm to Sprint's market share. It impacts the inventory of thousands of downstream distribution points, and it tarnishes Sprint's reputation. Sprint is an unwitting victim that cannot possibly make business decisions about device selection by trying to anticipate the potential immediate impact of preliminary injunctions such as the one here. The extraordinary remedy of a preliminary injunction is both unnecessary and unjust for most cases involving legitimate smartphone manufacturers,[3] particularly where the asserted patent is directed to a single feature in the smartphone.

The present amicus brief emphasizes two primary points. First, the Court should take note of the broader concerns beyond the parties to any particular smartphone patent dispute and the substantial and irreparable harm that ripples through the industry when preliminary injunctive relief is allowed to become a staple of the so-called "smartphone wars." Second, the Court should exercise due

---

[3] Different considerations may apply in cases involving counterfeiting.

- 2 -

care to minimize the adverse impacts on non-parties such as Sprint and others in evaluating a preliminary injunction. Here, as in most cases, relief after full consideration on the merits should be sufficient to resolve the dispute between Apple and Samsung without causing substantial unnecessary harm to an entire industry.

## <u>ARGUMENT</u>

**I.   A PRELIMINARY INJUNCTION IS AN EXTRAORDINARY REMEDY IN WHICH THE COURT MUST TAKE INTO ACCOUNT THE POSSIBILITY OF HARM TO OTHER INTERESTED PERSONS.**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Courts "should pay particular regard for the public consequences of employing the extraordinary remedy of injunction." *Id.* (internal quotations omitted). This Court has long recognized that a court exercising its equitable discretion in considering a preliminary injunction should, where relevant, "take into account [] the possibility of harm to other interested persons." *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1579 (Fed. Cir. 1983), *overruled on other grounds as explained in Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148-50 (Fed. Cir. 2011); *see also, e.g.*, *McGlone v. Bell*, 681 F.3d 718, 735-36 (6th Cir. 2012) (recognizing motion for preliminary injunction must consider private harms to others); *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 966 (8th Cir. 1999) (same);

*Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1392-93 (7th Cir. 1992) (same); *Punnett v. Carter*, 621 F.2d 578, 587-88 (3d Cir. 1980) (same).  Thus, balancing the equities includes considering the private interests of third parties.

## II.  A PRELIMINARY INJUNCTION SUBSTANTIALLY AND IRREPARABLY HARMS SPRINT, PERMEATES AN ENTIRE INDUSTRY AND ITS CONSUMERS, AND IS UNNECESSARY TO RESOLVE THE DISPUTE BETWEEN APPLE AND SAMSUNG.

As explained in more detail below, an immediate, preliminary injunction against one of Sprint's handset devices, such as the Galaxy Nexus as in this case, harms Sprint's substantial investment in its device portfolio and threatens irreparable harm to Sprint's market share.  The devices in Sprint's portfolio are not interchangeable.   Bringing a device to market takes hundreds of people approximately 9-12 months.  An immediate, preliminary injunction leaves a void in Sprint's device portfolio that cannot be filled for many months, placing Sprint at risk of losing significant sales and market share.  It impacts the inventory of thousands of downstream distribution points, and it tarnishes Sprint's reputation with its customers and potential customers.  A preliminary injunction such as the one here makes Sprint and its retailers and customers unwitting victims in the cross-hairs of the parties' dispute.  It is also unnecessary because relief on the merits should be sufficient to resolve the dispute between Apple and Samsung.

**A.    An Immediate Preliminary Injunction Harms Sprint's Substantial Investment in its Device Portfolio and Causes Irreparable Harm to Sprint's Market Share.**

An immediate, preliminary injunction against one of Sprint's devices, such as the Galaxy Nexus in this case, substantially harms Sprint's investment in its portfolio of devices that can be used with its wireless network.  (Ex. B, Owens Decl. ¶ 5.)  Sprint carefully selects a limited portfolio of handsets, with each device chosen to appeal to a specific customer type or market segment.  Most handsets employed by Sprint serve a specific market need, with limited segment overlap.  (*Id.* ¶ 6.)  Thus, the devices in Sprint's portfolio are not interchangeable.  Each of Sprint's handset devices have differing combinations of strengths that appeal to different needs and desires of different consumers.  Many factors contribute to consumer demand for a particular device.  These may include:

- the satisfaction and usability of the handset itself, which may be based on a variety of factors such as phone attractiveness, durability, phone and/or screen size, device speed, voice quality, ease of making calls and typing words, battery life, and memory capacity;

- availability of features such as the ability to access the internet, check personal and/or business email, take or send pictures or videos, access Facebook or Twitter, watch videos/clips, download applications, listen to streaming radio, and use GPS;

- ability to successfully and easily connect to particular network(s) (e.g., 3G, 4G, etc.) or WiFi;

- the operating system used on the device and the extent to which the user can directly access that operating system;

- capability to access different application marketplaces; and

- cost.

(*Id.* ¶ 7.)  These factors are merely exemplary.  (*Id.*)

If a particular device is unexpectedly and suddenly removed from Sprint's device portfolio, it has no immediate replacement because Sprint carefully selects its devices to have limited market segment overlap.  Accordingly, a preliminary injunction places Sprint at risk of being unable to serve a particular group of customers, which harms both Sprint and the consumer.  Moreover, a preliminary injunction can upset normal market dynamics.  For example, if other carriers also need a replacement device for the same market segment, the preliminary injunction can cause or aggravate shortages in replacement devices and diminish Sprint's ability to keep and attract customers and to protect its reputation and market share. (*Id.* ¶ 8.)

Although Sprint does not manufacture smartphones, Sprint invests heavily and devotes an extraordinary amount of resources to each smartphone that it supports.  Handsets are highly technical, complex devices.  The process of selecting a device and preparing to support it at market is lengthy.  Selecting a phone requires intense understanding of the phone, its features, and its probable customer base.  But selecting a phone is just the beginning.  It then takes approximately 9-12 months to bring the device to market.  Hundreds of people

within Sprint are involved in the process for each handset, in addition to an untold number of people employed by the handset manufacturers and numerous third party vendors and business partners.  The device must comply with Sprint specifications, meet extensive requirements, be tested exhaustively for thousands of features and combinations, and be certified to operate reliably on multiple domestic networks and with multiple network infrastructure providers, plus more networks and providers if the device is a global one.  (*Id.* ¶ 9.)

Bringing a device to market also typically involves building a marketing plan around the launch, which often includes a sizeable advertising commitment and corresponding media planning.  An immediate injunction can result in millions of dollars of wasted ad revenue or, worse yet, irreparable damage to Sprint's reputation for a perceived failure to deliver the advertised goods or to meet publicly announced sales dates for the devices.  (*Id.* ¶ 10.)

The training aspect associated with a device launch also is incredibly resource intensive.  Each device launch requires hours of training for multiple representatives at thousands of Sprint company stores, dealers, and national retailers, as well as of employees within Sprint's Customer Care.  (*Id.* ¶ 11.)  For all of these reasons, an unexpected, immediate removal of a device from Sprint's handset portfolio results in a gap that is virtually impossible to fill for several months.

**B.    An Immediate Preliminary Injunction Leaves a Void in Sprint's Device Portfolio that Places Sprint at Risk of Losing Market Share, Impacts Thousands of Distribution Points, and Tarnishes Sprint's Reputation.**

An immediate preliminary injunction against a device substantially and irreparably harms Sprint by leaving a void in its device portfolio. The availability of a particular device is increasingly one of the main reasons a customer selects a carrier. If a customer wants to purchase a particular device, and the device is not available from Sprint, the customer will look for an alternative device. If Sprint does not have available the customer's second handset choice, Sprint risks losing that customer and others in that market segment. A preliminary injunction occurs too quickly to allow for effective contingency planning for alternative devices. As explained above, bringing a replacement phone to market in the segment would entail extensive and time-consuming resources, and would likely take 9-12 months. Sprint risks losing market share for customers who will not wait for a handset that meets their needs and desires. (*Id.* ¶ 12.)

This further harms Sprint's downstream customers and the demands of consumers. It takes the device out of the market, stopping flow of the entire distribution chain. This impacts the inventory of thousands of distribution points, including national retailers, company-owned facilities, and franchisees. (*Id.* ¶ 13.)

Sprint also suffers reputational harm from the immediate preliminary injunction. Customers often do not delineate between the manufacturer and the

wireless carrier when they have device problems. The purchase cost for a smartphone is often rolled up into or otherwise accounted for by the end user's contractual obligation to pay for Sprint service over a fixed term, which drives users' perceptions that a particular phone is a Sprint phone and/or was purchased from Sprint. Additionally, Sprint incorporates its logos, trademarks, or branding in some of the smartphones it resells. In most instances, it is Sprint, not the handset manufacturer, that has the ongoing relationship with the customer. The customer pays monthly bills to Sprint, and Sprint provides customer support. An immediate preliminary injunction against a device may cause confusion in customers' minds about the propriety of owning a Sprint-branded device, irreparably tarnishing Sprint's reputation. (*Id.* ¶ 14.) If a customer needs a temporary software patch to remove a feature to comply with a preliminary injunction, the customer likely will attribute the removal of the feature to Sprint. When a customer needs to repair the device, Sprint may not have sufficient inventory to make the repair if a preliminary injunction unexpectedly interrupts Sprint's supply chain. If a customer breaks or loses the device, the customer may not be able to get the same device on an equipment replacement claim if Sprint no longer has pre-existing inventory. In short, any customer frustration may reflect poorly on Sprint. Thus, there is a risk that the public in general will impute reputational harm to Sprint. (*Id.* ¶ 15.)

C.    **Preliminary Injunctive Relief Should Not Become a Staple of the "Smartphone Wars" Because it Places Sprint in the Cross-Hairs of the Parties' Dispute as an Unwitting Victim, and is Unnecessary to Resolve the Parties' Dispute Via Relief on the Merits.**

When a lawsuit pits two legitimate smartphone manufacturers against each other, as is the case here, preliminary injunctive relief against a particular smartphone is rarely equitable to Sprint or its customers and can harm the entire smartphone ecosystem.  Courts should take into consideration the possibility of harm to others who are not parties to the disputes between the device manufacturers.

Here, Sprint is an unwitting victim of the preliminary injunction. Smartphones are such highly technical, complex devices that it has been estimated that over 250,000 patents are relevant to smartphones.[4]  Thus, this case is unlike some other patent-oriented industries such as pharmaceuticals where a single or a very limited number of patents are the focus of and create demand for the entire product.  Generally, one smartphone patent does not drive consumer demand for an entire device.  There are many factors that go into a consumer's evaluation to purchase a particular smartphone.  With more than a quarter of a million United States patents directed to smartphones, it is no wonder that the smartphone industry

---

[4] *See* Steve Lohr, *A Bull Market in Tech Patents*, N.Y. TIMES (Aug. 16, 2011), *available at* http://www.nytimes.com/2011/08/17/technology/a-bull-market-in-tech-patents.html?pagewanted=all (last visited July 7, 2012).

is rife with patent litigation. The district court described the present lawsuit as "but one action in a worldwide constellation of litigation" between Apple and Samsung. (A2.) Other companies are also involved in the smartphone wars. Indeed, a non-exhaustive review of competitor lawsuits among smartphone handset manufacturers reveals that at least fifty-five patent lawsuits have been filed in U.S. district courts in the last five years alone. *See* Ex. D (listing district court lawsuits in the last five years). This list does not even include ITC actions seeking an exclusion order, nor does it include the numerous foreign patent enforcement efforts in international courts and tribunals.[5]

Sprint cannot possibly make decisions about the devices it will carry months ahead of time by trying to predict whether a court might grant a preliminary injunction against a device manufacturer, at any given time, based on any one of hundreds of thousands of patents, because of one of many features in the phone, in the complex and uncertain environment of patent litigation.

Other tribunals have recognized the need for a transition period before a smartphone injunction takes effect to minimize the impact on third parties. For example, in a recent opinion from the International Trade Commission ("ITC")

---

[5] Exhibit D also omits numerous cases spawned by patent right transfers that effectively result in industry-wide patent enforcement. For example, Exhibit D does not include some instances in which handset manufacturers transferred patent rights to non-practicing entities, which in turn promptly asserted those rights against others in the smartphone industry.

involving a dispute between Apple and another device manufacturer, High Tech Computer Corp. ("HTC"), the ITC recognized the competitive harms that befall the industry when an immediate import ban issues on a smartphone. (*See generally* Ex. C, Comm'n Opinion excerpts)   There, even after an infringement finding on the merits, the ITC *still* delayed the import ban and implemented conditions sufficient to ameliorate competitive harm to wireless carriers. (*Id.* at 83.)  The ITC recognized that even after a full proceeding, a four-month delay of the import ban was appropriate to minimize the impact on third parties even where ample substitutes existed for the accused smartphone at issue. (*Id.* at 69-71, 79, 83.)  The ITC stated that one of the reasons for the four-month transition period was to offer consumers the same range of product and price-point choices. (*Id.* at 81.)  The ITC further conditioned the import ban on not applying for two years to refurbished handsets to be provided to customers as replacements under warranty or insurance contracts. (*Id.* at 83.)  Thus, the ITC recognized the disruption to the industry that occurs when instituting an immediate ban.

In sum, preliminary injunctive relief should not become a staple of the "smartphone wars."  "A preliminary injunction is a drastic and extraordinary remedy."  *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).  It is rarely warranted, particularly where the accused feature is a single feature of a multi-faceted smartphone.  Here, relief on the merits should be

sufficient to resolve the dispute between Apple and Samsung without causing substantial, irreparable, and unnecessary harm to an entire industry.

## III. CONCLUSION

Preliminary injunctions against smartphones like the one issued by the district court here threaten to wreak havoc on an entire industry. Hundreds of thousands of patents fuel the widespread smartphone wars between the device manufacturers. Unexpected and sudden preliminary injunctions have far-reaching implications beyond the parties, causing substantial and irreparable harm to non-parties. For telecommunications carriers like Sprint, a preliminary injunction destroys countless hours spent designing, testing, training, and marketing a device, it threatens to irreparably harm market share, and it tarnishes reputations. Moreover, its impact ripples through other businesses involved in the smartphone ecosystem. Given the exorbitant number of relevant patents and the relatively few number of devices, a void in wireless devices and services would result if preliminary injunctions become the norm in smartphone patent disputes.

Accordingly, Sprint respectfully requests that this Court REVERSE the district court to allow Apple and Samsung to fully litigate their dispute on the merits before burdening third parties such as Sprint with the consequences of a drastic and extraordinary remedy of a preliminary injunction.

Dated:  July 23, 2012

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:   /s/ Jonathan N. Zerger
Jonathan N. Zerger
Counsel for Amicus Curiae
Sprint Spectrum, L.P.

**PROOF OF SERVICE**

It is hereby certified that on July 23, 2012, the foregoing document was filed electronically in compliance with Federal Circuit Rule 25(a) and the Court's Administrative Order Regarding Electronic Case Filing. The undersigned certifies that a true and correct copy of the attached SPRINT SPECTRUM, L.P.'S AMICUS CURIAE BRIEF IN SUPPORT OF REVERSAL OF PRELIMINARY INJUNCTION was caused to be served on the attorneys of record via email as follows:

| | |
|---|---|
| Charles K. Verhoeven<br>charlesverhoeven@quinnemanuel.com<br>Kevin P.B. Johnson<br>kevinjohnson@quinnemanuel.com<br>Victoria F. Maroulis<br>victoriamaroulis@quinnemanual.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065<br>Telephone: (650) 801-5000<br>Facsimile: (650) 801-5100<br><br>William C. Price<br>williamprice@quinnemanuel.com<br>Patrick M. Shields<br>patrickshields@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br><br>Derek L. Shaffer<br>derekshaffer@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>1299 Pennsylvania Ave., NW<br>Suite 825 | Attorneys for Defendants-Appellants<br><br>SAMSUNG ELECTRONICS CO., LTD, SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |

| | |
|---|---|
| Washington, D.C. 20004<br>Telephone:  (202) 538-8000<br>Facsimile:  (202) 538-8100 | |
| Harold J. McElhinny<br>hmcelhinny@mofo.com<br>Michael A. Jacobs<br>mjacobs@mofo.com<br>Richard S.J. Hung<br>rhung@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>Telephone: (415) 268-7000<br>Facsimile: (415) 268-7522<br><br>Mark D. Selwyn<br>Mark.selwyn@wilmerhale.com<br>WILMER   CUTLER   PICKERING<br>HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>Telephone: (650) 858-6031<br>Facsimile: (650) 858-6100<br><br>Josh A. Krevitt<br>jkrevitt@gibsondunn.com<br>H. Mark Lyon<br>mlyon@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, CA 94302-1211<br>Telephone: (650) 849-5300<br>Facsimile: (650) 849-5333<br><br>Mark A. Perry<br>mperry@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Ave., NW<br>Washington, D.C. 20036-5306 | Attorneys for Plaintiff-Appellee<br><br>APPLE INC. |

| | |
|---|---|
| Telephone:  (202) 887-3667<br>Facsimile:  (802) 530-9696 | |
| Kevin X. McGann<br>kmcgann@whitecase.com<br>Christopher J. Glancy<br>cglancy@whitecase.com<br>WHITE & CASE LLP<br>115 5 A venue of the Americas<br>New York, New York 10036<br>Telephone: 212-819-8200<br>Facsimile: 212-354-8113 | Attorneys for Amicus Curiae<br><br>Google Inc. |

Dated: July 23, 2012

/s/ Jonathan N. Zerger_____
Jonathan N. Zerger

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned individual hereby certifies that SPRINT SPECTRUM, L.P.'S AMICUS CURIAE BRIEF IN SUPPORT OF STAY OF PRELIMINARY INJUNCTION complies with Federal Rule of Appellate Procedure 29(d) limiting an amicus brief to one-half the length of the principal brief.  The length of the brief is 3,035 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, Office 2003, in Times New Roman, 14 point.

Dated: July 23, 2012                    _/s/ Jonathan N. Zerger_____
                                        Jonathan N. Zerger
                                        Counsel for Amicus Curiae
                                        Sprint Spectrum, L.P.